The CITY OF AUSTIN and Elaine Hart, in her official capacity as City Manager of the City of Austin, Appellants

v.

UTILITY ASSOCIATES, INC.; and Mr. V. Bruce Evans, a resident of Austin, Texas, Individually, Appellees

Appellants, The City of Austin; and Elaine Hart, in her official capacity as City Manager of the City of Austin// Cross–Appellants, Utility Associates, Inc. and Mr. V. Bruce Evans, a Resident of Austin

v.

Appellees, Utility Associates, Inc. and Mr. V. Bruce Evans, a Resident of Austin// Cross–Appellees, The City of Austin; and Elaine Hart, in her official capacity as City Manager of the City of Austin

NO. 03–16–00565–CV, NO. 03–16–00586–CV

Court of Appeals of Texas, Austin.

Filed: March 24, 2017

---

Jose Ortiz, Nathaniel Peter Holzer, Shelby A. Jordan, Jordan, Hyden, Womble, Culbreth & Holzer, PC, Peter Barlow, Smith, Gambrell & Russell, LLP, Austin, TX, for Appellees.

Matthew Tynan, Austin, TX, for Appellants.

Before Justices Puryear, Pemberton, and Field

## OPINION

Bob Pemberton, Justice

These consolidated causes arise from a lawsuit seeking to challenge a municipal contract procurement. One cause presents competing interlocutory appeals from a district-court order that granted a plea to the jurisdiction in part, denied it in part, and dismissed some of the claims over which jurisdiction was challenged. The other cause presents an interlocutory appeal challenging portions of a temporary injunction. The net effect of our holdings below is that we dismiss additional claims for want of jurisdiction and vacate the challenged portions of the temporary injunction.

## BACKGROUND

After requesting and evaluating proposals through what it represented to be an objective, competitive process, the City of Austin awarded and later executed a $12.2 million contract to Taser International, Inc., for the provision of body-worn cam-

eras for use by the Austin Police Department (APD). One of the vendors that had submitted a competing proposal, Utility Associates, Inc., accused City staff of manipulating or corrupting the selection process to favor Taser. Utility protested the award unsuccessfully through the City's internal administrative processes, then sought judicial relief through suit against the City and, in her official capacity, the City Manager (collectively, the City Defendants).[1] Utility was later joined as a plaintiff by a resident City taxpayer, V. Bruce Evans (collectively, Plaintiffs). In their live pleadings, Plaintiffs asserted claims for injunctive relief, declaratory relief under the Uniform Declaratory Judgments Act (UDJA),[2] and the attorney's fees that the UDJA would authorize with the declaratory claims.[3]

The substantive relief Plaintiffs sought fell into two basic categories:

(1) The first category of claims sought to establish that the contract award to Taser had been unlawful or void and, on that basis, prevent the City from performing the contract. Specifically, Plaintiffs sought declarations that the City Defendants had "engaged in an improper procurement unauthorized by law" and that "the award of the RFP [request for proposals] to Taser by the City Council ... is void as unauthorized by law." Predicated on those same legal determinations, Plaintiffs sought an injunction barring the City Defendants from "perform-

---

1. The suit originally named, in his official capacity, Marc A. Ott, the former City Manager. We have automatically substituted the interim successor to this office, Elaine Hart. See Tex. R. App. P. 7.2. The original petition also purported to sue Mr. Ott individually, but these allegations or claims were dropped through subsequent amendment.

2. See Tex. Civ. Prac. & Rem. Code §§ 37.001–.011.

3. See id. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

ing any aspect of the Contract [with Taser]."

(2) The second category was calculated to secure the contract award for Utility upon the invalidation of the award originally made to Taser. Plaintiffs alleged (and would later present evidence) that City staff had utilized a scoring system in evaluating the competing proposals and that Utility had been assigned a score second only to Taser's assigned score. Premised on their allegations that Taser's scores and resultant award had been illegitimate, Plaintiffs sought an injunction "requiring the [City Defendants] to award the Contract to Utility as the highest scoring responsible Offeror," and a corresponding declaration that "the Contract for the RFP be awarded to Utility as the highest scoring responsive Offeror for the RFP." Relatedly, Plaintiffs prayed for an additional injunction calculated to preserve Utility's runner-up status in the procurement and its claimed interest in obtaining the contract award in lieu of Taser, barring the City Defendants from "cancelling the procurement for, or awarding the Contract to, anyone other than the highest scoring responsible Offeror."

Following an evidentiary hearing, Plaintiffs obtained a temporary injunction that purported to preserve the status quo pending trial with respect to each set of claims, barring the City Defendants from, respectively: (1) "performing any of their obligations arising under or in furtherance of the Contract" with Taser; or (2) "cancel-

ling or otherwise terminating [the RFP] for body worn cameras." The City Defendants perfected an interlocutory appeal of this order,[4] which we docketed as Cause No. 03–16–00565–CV.

The City Defendants also interposed pleas to the jurisdiction, principally asserting governmental immunity as a bar to suit. The parties' arguments in this regard centered largely on the extent to which Plaintiffs' claims were authorized under a provision of Chapter 252 of the Local Government Code. Chapter 252, titled, "Purchasing and Contracting Authority of Municipalities," requires municipalities to use prescribed competitive processes when entering into certain contracts requiring expenditures of municipal funds.[5] Subchapter D of Chapter 252 authorizes enforcement of the chapter's requirements through criminal penalties,[6] removal and other professional sanctions against an offending municipal official or employee,[7] and also the following civil remedy found in Section 252.061:

> If the contract is made without compliance with this chapter, it is void and the performance of the contract, including the payment of any money under the contract, may be enjoined by:
> (1) any property tax paying resident of the municipality; or
> (2) a person who submitted a bid for a contract for which the competitive sealed bidding requirement applies, regardless of residency, if the contract is for the construction of public works.[8]

Section 252.061, as this Court has recognized previously, effects a waiver of immu-

---

4. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (authorizing appeal of interlocutory order from district court that "grants ... a temporary injunction").

5. *See* Tex. Loc. Gov't Code §§ 252.001–.063.

6. *See id.* § 252.062.

7. *See id.* §§ 252.062–.063.

8. *Id.* § 252.061.

nity to the extent of the claims it authorizes against the municipality whose actions are in question.[9]

The City Defendants further contended that Plaintiffs' UDJA claims (to the extent not already barred by governmental immunity) were jurisdictionally barred as remedies redundant of the relief provided under Section 252.061 and serving merely as an impermissible vehicle for recovering otherwise-unauthorized attorney's fees. Following a hearing at which no additional evidence was presented, the district court granted the City Defendants' plea to the extent of dismissing all of Plaintiffs' claims under the UDJA, for both declarations and attorney's fees. However, the district court denied the plea "as to Plaintiffs' claim under Tex. Loc. Gov't Code § 252.061." The effect of these rulings was to maintain jurisdiction over all of Plaintiffs' claims for injunctive relief, but only those claims. The City Defendants perfected an appeal of the order denying their plea in part, and Plaintiffs cross-appealed the order granting the plea in part and dismissing their UDJA-based claims.[10] These appeals were docketed under Cause No. 03–16–00586–CV, and subsequently consolidated with Cause No. 03–16–00565–CV on the City Defendants' unopposed motion.

Following completion of briefing, City staff placed on the Austin City Council agenda a request for authorization to negotiate and execute a smaller ($4 million) version of a body-camera-purchase contract with Taser through an alternative means—a non-competitive, "direct purchase" arrangement through a buying cooperative administered by the Texas Association of School Boards. Although apparently not disputing the legality of this contracting method or procedure in itself, Plaintiffs have urged that this effort "circumvents" the earlier temporary injunction barring the City Defendants from "cancelling or otherwise terminating [the RFP] for body worn cameras" (i.e., the portion aimed at preserving the status quo as to the second category of Plaintiffs' underlying claims). Plaintiffs obtained a February 15 temporary restraining order barring the City Defendants "from entering into any contract or agreement for the purchase[ ] of bodyworn cameras" pending a hearing to determine whether the order should be made a temporary injunction. This TRO has since expired, but in the interim Plaintiffs sought injunctive relief from this Court to the same effect. We issued a temporary stay in order to preserve our jurisdiction and the parties' claimed rights.[11]

## ANALYSIS

▪ The most pivotal considerations in our disposition of these appeals are the legal principles that define and limit the

---

**9.** *See City of New Braunfels v. Carowest Land, Ltd.,* 432 S.W.3d 501, 532–33 (Tex. App.–Austin 2014, no pet.); *accord City of El Paso v. Waterblasting Techs., Inc.,* 491 S.W.3d 890, 895–98 (Tex. App.–El Paso 2016, no pet.).

**10.** *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing appeal of interlocutory order from district court that "grants or denies a plea to the jurisdiction by a governmental unit"); *see also Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 841–45 (Tex. 2007) (right of appeal under Section 51.014 extends to government officials sued in official capacity who have asserted trial-level jurisdictional challenges).

**11.** *See City of Austin v. Utility Assocs., Inc.,* Nos. 03–16–00565–CV, 03–16–00586–CV, slip op. at 2 (Tex. App.–Austin Mar. 9, 2017), *available at* http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=8d 33166c-afbd-477b-8356-ed5171a26cce & coa=coa03 & DT=Order & MediaID=42c824f9-7f48-4857-9dc1-59c718c9fb3b (last visited March 11, 2017).

district court's subject-matter jurisdiction to adjudicate Plaintiffs' claims. We review questions of subject-matter jurisdiction de novo.[12] This inquiry is not necessarily confined to the precise jurisdictional challenges or arguments presented by the parties, because jurisdictional requirements may not be waived and "can be—and if in doubt, must be—raised by a court on its own at any time," including on appeal.[13] Accordingly, the discussion that follows departs somewhat from the parties' own framing of the jurisdictional issues.[14]

■ Plaintiffs had the burden of pleading or presenting evidence of facts that would demonstrate the district court's jurisdiction to entertain their claims.[15] To invoke the district court's subject-matter jurisdiction here, Plaintiffs' chief challenge is to avoid or overcome the City's governmental immunity.

## Do Plaintiffs' claims implicate governmental immunity?

■ Governmental immunity protects political subdivisions of the State, including municipalities, and generally their agents, when performing "governmental" as opposed to "proprietary" functions.[16] There is no question that the City's contracting to provide equipment to its police force falls into the "governmental" category.[17] Governmental immunity is an extension or application of the State's sovereign immunity, the age-old, common-law doctrine that shields the State, its agencies, and generally its officials from suit[18]—and thereby correspondingly implicates the judiciary's

12. *See, e.g., University of Hous. v. Barth,* 403 S.W.3d 851, 854 (Tex. 2013) (per curiam) (citing *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004)).

13. *Finance Comm'n of Tex. v. Norwood,* 418 S.W.3d 566, 580 (Tex. 2013) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex. 1993)); *see also Texas Ass'n of Bus.,* 852 S.W.2d at 445 ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties." (citations omitted)).

14. Similarly, we have not belabored certain arguments raised by the parties that are ultimately misplaced or immaterial under the controlling legal principles. *See* Tex. R. App. P. 47.1.

15. *See, e.g., Ex parte Springsteen,* 506 S.W.3d 789, 798 n.50 (Tex. App.–Austin 2016, pet. filed) (citing *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex. 2010) (per curiam)).

16. *See, e.g., Wasson Interests, Ltd. v. City of Jacksonville,* 489 S.W.3d 427, 439 (Tex. 2016) (holding that "the common-law distinction between governmental and proprietary acts— known as the proprietary-governmental dichotomy—applies in the contract-claims context just as it does in the tort claims context"); *Tooke v. City of Mexia,* 197 S.W.3d 325, 343

(Tex. 2006) ("A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." (citations omitted)).

17. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(1) (listing "police and fire protection and control" among specifically enumerated "governmental functions" for purposes of Tort Claims Act); *Wasson Interests, Ltd.,* 489 S.W.3d at 439 ("Although the [Texas Tort Claims Act] was enacted with the tort-claims context in mind, we see no reason its definitional guidance cannot or should not also apply in the contract-claims context.... In determining the boundaries of immunity as it relates to whether a function is proprietary or governmental ... courts should be guided ... by the TTCA's treatment of the proprietary-governmental distinction." (citing *Tooke,* 197 S.W.3d at 343–44)).

18. *See, e.g., Carowest Land, Ltd.,* 432 S.W.3d at 512 (citing *City of Hous. v. Williams,* 353 S.W.3d 128, 134 (Tex. 2011); *Tooke,* 197 S.W.3d at 345). Sovereign and governmental immunity also extend to immunity from liability, but only immunity from suit implicates jurisdiction and is our focus here. *See Carowest Land, Ltd.,* 432 S.W.3d at 513 n.19 (citing *Miranda,* 133 S.W.3d at 224).

subject-matter jurisdiction to entertain that suit[19]—unless and to the extent waived by the Legislature.[20]

██ Sovereign and governmental immunity effectively shield a wide range of "improvident" governmental acts from the civil remedies that would be available if the same acts were committed by private persons instead.[21] Consequently, the Judiciary's adherence to the doctrine can yield case outcomes perceived to depart from subjective understandings of "justice" as viewed within the context of the court system. Plaintiffs stress such themes here, insisting that the judicial remedies they seek (including attorney's fees, as they pointedly emphasize) are essential weapons against "public corruption," further equating the City's contract award to Taser with various municipal bribery and kickback schemes that have made the news lately.[22] But the "contemporary rationale" for sovereign and governmental immunity, the Texas Supreme Court has explained, is that "the Legislature, not the Judiciary, is best suited to make the policy-laden judgments" as to whether the resources of Texas governmental units should be expended in defending lawsuits and complying with judgments, versus other priorities.[23] The controlling consideration, in other words, is not the perceived justness of Plaintiffs' professed cause as self-styled "corruption fighters," but the extent to which broader State policy prioritizes pursuit of that cause through the private civil remedies Plaintiffs seek.

██ In their cross-appeal, Plaintiffs insist that they asserted, via the UDJA, claims that fall within the *ultra vires* doctrine and thereby do not implicate the City Defendants' governmental immunity. Under the *ultra vires* doctrine, immunity does not bar a suit against a government officer to restrain acts that are beyond the officer's lawful authority (hence the "*ultra vires*" label).[24] There are four important requirements for such a suit. First, the suit must formally be pleaded against a governmental official, in his or her official capacity, not the government principal, a procedure conforming to an underlying concept that *ultra vires* suits do not seek to judicially control the government, but merely to reassert the control *of* the government.[25] Second, the "suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a

---

19. *See, e.g., Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) ("[R]egardless of whether immunity [from suit] equates to a lack of subject-matter jurisdiction for all purposes, it implicates a court's subject-matter jurisdiction over pending claims.").

20. *See, e.g., Carowest Land, Ltd.*, 432 S.W.3d at 513.

21. *See Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 172 (Tex. App.–Austin 2013, no pet.) (citing *Tooke*, 197 S.W.3d at 331–32). This is so regardless how "improvident, harsh, unjust, or infuriatingly boneheaded these acts may seem." *Id.*

22. *E.g., Corruption in a Small Texas Town*, FBI.GOV, *available* at https://www.fbi.gov/news/stories/corruption-in-a-small-texas-town (last visited Mar. 10, 2017).

23. *Bacon*, 411 S.W.3d at 172–73 (citing *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) (citing *Texas Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex. 2002)); *Tooke*, 197 S.W.3d at 331–32).

24. *See, e.g., Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 161 (Tex. 2016).

25. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009).

purely ministerial act."[26] The third limitation relates to the nature and effect of the remedy sought. The remedy must be prospective in nature—i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy past violations.[27] The fourth limitation, closely related to the third, is that an *ultra vires* claim otherwise within the trial court's jurisdiction may independently implicate immunity if it would have the effect of establishing a right to relief against the government for which the Legislature has not waived immunity.[28]

▮▮▮ Plaintiffs complied with the first *ultra vires* requirement by naming the City Manager, in her official capacity, as a defendant. But the remaining requirements are more problematic for Plaintiffs. As the source of the legal authority or ministerial duties that the City Defendants are allegedly transgressing, Plaintiffs point to Chapter 252 of the Local Government Code, the municipal-contracting statute noted previously.

Subject to certain exceptions, Chapter 252 requires a municipality to comply with prescribed procedures for either "competitive sealed bidding" or "competitive sealed proposals" when entering into a contract to purchase goods or services requiring an expenditure of more than $50,000 in municipal funds.[29] Plaintiffs assert that Chapter 252 applied to the City's contract for purchase of body-worn cameras that was ultimately awarded to Taser and that the City opted to utilize the competitive-sealed-proposals procedures. Assuming so,[30] Chapter 252 in material part required that the City issue, and give notice of, a request for proposals that "solicit[ed] quotations" and "specif[ied] the relative importance of price and other [statutorily permitted] evaluation factors" that the City had deemed material to achieving "the best value for the municipality."[31] The chapter further authorized the City to conduct "discussions," "in accordance with the terms of a request for proposals and with regulations adopted by the governing body of the municipality," with "offerors" (i.e., vendors who submit proposals) "who are determined to be reasonably qualified for the award of the contract."[32] In that event, Chapter 252 mandated that "[o]fferors shall be treated fairly and equally with respect to any opportunity for discussion

**26.** *Id.* at 372.

**27.** *Id.* at 373–77.

**28.** *See, e.g., Texas Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 388–89 (Tex. 2011) (title as against the State); *City of Hous. v. Williams,* 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam) (retrospective monetary relief).

**29.** *See* Tex. Loc. Gov't Code § 252.021; *see also id.* §§ 252.002 (municipal charter provisions generally control over contrary provisions of chapter), .022 (general exemptions from chapter).

**30.** Before the district court, the City Defendants contested Chapter 252's applicability to this contract, citing a general exception from the chapter for "a procurement necessary to preserve or protect the public ... safety of the municipality's residents[.]" *Id.* § 252.022(a)(2). But we do not understand the City Defendants to contest Chapter 252's applicability on appeal, and in any event we find no indication in the record that the City determined this particular body-camera procurement to be necessary to preserve or protect its residents' public safety, so as to warrant exemption from Chapter 252's procedures. To the contrary, it is undisputed that the City Defendants purported to follow (at least until litigation began) a competitive request-for-proposal process generally resembling Chapter 252's competitive-sealed-proposal procedures.

**31.** *See id.* §§ 252.021(c), .041(a), (b), .042(a), .043(b).

**32.** *See id.* § 252.042(b).

and revision of proposals."[33] And where "the competitive sealed proposals requirement applies to the contract" under Chapter 252, the statute required that "the contract must be awarded to the responsible offeror whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors included in the request for proposals."[34]

As for conduct that would be *ultra vires* of Chapter 252's requirements, Plaintiffs complain that the City Defendants ultimately failed to award the contract, as Chapter 252 states they "must" do, "to the responsible offeror whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors included in the request for proposals."[35] This is so, Plaintiffs insist, because Taser was not a "responsible offeror" in their view, and should thereby have been disqualified from consideration. In support of that conclusion, Plaintiffs allege chiefly that Taser's proposal failed to comply with numerous "mandatory technical requirements" set forth in the City's RFP. In support, Plaintiffs cite such perceived deficiencies as "[t]he Taser Offer did not include a mobile viewing device (Technical Requirement 1.1); ... was not capable of being managed with a single management console (Technical Requirement 1.9); ... was not capable of encrypt-

ing data from end-to-end in a manner which prohibits the service provider from accessing the video (Technical Requirement 1.10); [and] ... could not identify which user was wearing a given camera (Technical Requirement 2.2)." Plaintiffs additionally complain that Taser's offer or proposal "did not contain complete pricing as required by the RFP," citing an alleged failure by Taser to "comply with Section 2, Part IV of Section 0600 of the RFP."

Where, as here, a governmental body has been delegated authority to make some sort of decision or determination, immunity jurisprudence has long emphasized a critical distinction between alleged acts of that body that are truly *ultra vires* of its decision-maker authority, and are therefore not shielded by immunity, and complaints that the body merely "got it wrong" while acting within this authority, which are shielded.[36] "Indeed," as the Texas Supreme Court recently observed, "an *ultra vires* doctrine that requires nothing more than an identifiable mistake would ... swallow immunity."[37] The above allegations by Plaintiffs, without more, amount only to disagreements with the outcome of determinations by the City Defendants that were well within their discretion to reach. It is true, as Plaintiffs emphasize, that Chapter 252 requires that "the contract *must* be awarded to the re-

---

**33.** *Id.*

**34.** *Id.* § 252.043(h).

**35.** *See id.*

**36.** *See, e.g., Hall v. McRaven*, 508 S.W.3d 232 (Tex. 2017) ("When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous," and citing numerous court of appeals decisions to that effect, including our decision in *Creedmoor–Maha Water Supply Corp. v. Texas*

*Commission on Environmental Quality*, 307 S.W.3d 505, 517–18 (Tex. App.–Austin 2010, no pet.)); *Creedmoor*, 307 S.W.3d at 517–18 ("allegations that [agency] reached an incorrect or wrong result when exercising its delegated authority [were] not facts that would demonstrate [agency] exceeded that authority" (citing *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.–Austin 1992, writ denied)).

**37.** *Hall*, 508 S.W.3d at 242.

sponsible offeror ..." [38] and that "must" typically denotes a requirement rather than a choice.[39] But Plaintiffs overlook that the identity of the "responsible offeror" to whom "the contract must be awarded" turns on multiple underlying determinations that the City Defendants were necessarily empowered to make—it is the offeror "whose proposal is *determined to be* the most advantageous to the municipality *considering* the relative importance of price and the *other evaluation factors* included in the request for proposals." [40] While Chapter 252 may require that the City Defendants weigh these specified considerations and factors,[41] it does not limit their discretion in the outcome of these judgment calls.[42] The above allegations of Plaintiffs would implicate the outcome of the City Defendants' determinations, not their legal authority to reach that outcome.

Yet Plaintiffs also rely on some further facts that present closer questions in the *ultra vires* analysis. These facts are to the effect that the City Defendants did not only "get it wrong" in determining the winning "responsible offeror," but deliber-

ately rigged the process in Taser's favor. Among these facts, Plaintiffs presented as evidence scoring sheets City staff had used when evaluating the competing proposals. Utility's scoring sheet reflects that staff made alterations so as to lower scores initially credited to Utility's proposal. This evidence, Plaintiffs suggest, supports a reasonable inference that City staff manipulated the scoring to help achieve a predetermined outcome in favor of Taser. While the City Defendants presented controverting testimony to the effect that staff made alterations in the course of innocuous good-faith deliberations, such assertions would fall short of negating any fact issue in that regard.[43]

But even if Plaintiffs have asserted any facts that would constitute conduct *ultra vires* of the City Defendants' decision-making authority and not merely "getting it wrong" under Chapter 252, they would still face an additional jurisdictional hurdle. As perhaps already highlighted by the preceding discussion, Plaintiffs complain of alleged past *ultra vires* conduct and assert claims for, or that must be preceded by,

---

**38.** Tex. Loc. Gov't Code § 252.043(h) (emphasis added).

**39.** *See* Tex. Gov't Code § 311.016(3) (" 'Must' creates or recognizes a condition precedent."); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001) (noting that "must" in a statute is "generally recognized as mandatory, creating a duty or obligation" (citations omitted)).

**40.** *See* Tex. Loc. Gov't Code § 252.043(h) (emphases added).

**41.** *See Hall,* 508 S.W.3d at 242–43 (acknowledging that where government officer's delegated determination "was subject to explicit constraints, i.e., what to consider," "[n]eglecting one of those constraints ... made the [officer's] determination—whether right or wrong—*ultra vires*" (explaining *Houston Belt,* 487 S.W.3d at 159, 161)).

**42.** *See id.* (where officer's delegated duty was to determine whether federal privacy law prevented disclosure of documents, and "[h]is discretion in making that determination is otherwise unconstrained," purported "misinterpretation" of law was not *ultra vires* of authority); *see also Creedmoor,* 307 S.W.3d at 517–18 (complaint about merits of agency's decision on petition did not state claim of conduct *ultra vires* of its delegated authority to decide petition).

**43.** *See Miranda,* 133 S.W.3d at 228 (when evidence submitted to support jurisdictional plea implicates merits of the claims, courts take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor, similar to the review of a traditional summary judgment) (citing *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997)).

relief that is retrospective in nature—they seek effectively to undo a contract award previously approved by the Austin City Council, invalidate an already-executed contract between the City and Taser, re-open the previously concluded procurement process, and compel the City Defendants to re-award the contract to Utility instead. In similar circumstances, this Court held that a suit to compel governmental compliance with a procurement statute, even if otherwise alleging conduct *ultra vires* of that statute, implicated immunity where the remedy had the purpose or effect of nullifying a contract with the government that had already been executed.[44] Distilling pertinent Texas Supreme Court guidance, we explained:

> It is well-established that a claim—including one under the UDJA—"seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State." *IT–Davy*, 74 S.W.3d at 855–56 (characterizing such claims as a form of "controlling state action"); *see W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 840 (1958) ("A suit against officers of a state, to require them to perform acts which constitute a performance of a contract by the state, is in effect a suit against the state itself. A suit against officers of a state, the purpose or effect of which is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to

require acts to be performed by them which would impose contractual liabilities upon the state, is a suit against the state.") (quoting *Herring v. Houston Nat'l Exch. Bank*, 113 Tex. 264, 253 S.W. 813, 814 (Tex.1923)). The Texas Supreme Court has historically regarded these immunity principles as also barring suits to cancel or nullify a contract made for the benefit of the state. *See W.D. Haden Co.*, 308 S.W.2d at 841 (" 'There is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or to recover damages for such breach, or *to cancel or nullify a contract made for the benefit of the state.*' ") (emphasis added) (quoting *Imperial Sugar Co. v. Cabell*, 179 S.W. 83, 89 (Tex. Civ. App.–Galveston 1915, no writ).[45]

 Plaintiffs suggest that we should disregard the City's execution of the contract with Taser—in effect, view matters prospectively from a point in time preceding that event—in light of accompanying conduct by the City and its legal department that Plaintiffs condemn as further indicia of "corruption." Plaintiffs explain that after Utility filed its original petition, it gave notice to the City of its impending

---

44. *See Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 118–23 (Tex. App.–Austin 2007, no pet.); *accord Satterfield & Pontikes Constr., Inc. v. Texas S. Univ.*, 472 S.W.3d 426, 431–33 (Tex. App.–Houston [1st Dist.] 2015, pet. denied) ("Texas courts have also 'regarded these immunity principles as ... barring suits to cancel or nullify a contract made for the benefit of the state.' " (quoting *Texas Logos, L.P.*, 241 S.W.3d at 120) (citing *W.D. Haden Co. v. Dodgen*, 158 Tex.

74, 308 S.W.2d 838, 840–41 (1958))); *Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 315–19 (Tex. App.–Fort Worth 2012, no pet.) (holding plaintiff's claim seeking to invalidate agreement with water supply district was barred by governmental immunity).

45. *Texas Logos, L.P.*, 241 S.W.3d at 119–20.

request for a temporary restraining order "and sought to cooperatively schedule a hearing date, as required by the Trial Court." But before the hearing could be held, according to Plaintiffs, the City or its lawyers took extraordinary measures to "hurriedly" execute the contract through a "midnight signing" in an effort to moot the case and thwart judicial jurisdiction and remedy.[46] We are not unsympathetic to Plaintiffs' frustration, but we are unpersuaded that any such conduct affects application of immunity doctrine under the controlling jurisprudence. The Texas Supreme Court has instructed us that the prospective-versus-retrospective distinction is "measured from the date of injunction,"[47] and it is undisputed that the City–Taser contract came earlier, whatever one thinks of the City Defendants' actions to bring about that result. Nor has the high court recognized (or at least not yet) any exception or limitation to immunity based on this or similar "bad conduct."[48] And even if we were to disregard the contract's exe-

cution for the reasons Plaintiffs cite, no such rationale would alter the retrospective nature of their challenges to the underlying Council vote to award the contract to Taser.

In sum, Plaintiffs can establish the district court's subject-matter jurisdiction to adjudicate their claims only through reliance on some legislative waiver of immunity.

## To what extent do Plaintiffs' claims come within a legislative waiver of immunity?

It is the Legislature's sole prerogative to decide whether, to what extent, or with what conditions or procedures immunity should be waived, and we are to defer to those judgments.[49] Likewise, we are to discern legislative intent to waive immunity only when "expressed in 'clear and unambiguous language' "[50] and accordingly must read statutory immunity waivers narrowly.[51] The meaning and

---

46. The City's efforts also purportedly entailed interrupting the vacation of the City's purchasing officer.

47. *Heinrich*, 284 S.W.3d at 376.

48. *See, e.g., Carowest Land, Ltd.*, 432 S.W.3d at 521 (noting that the Texas Supreme Court "has ... declined repeated requests to recognize a 'waiver by conduct' " (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Koseoglu*, 233 S.W.3d at 840; *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003); *IT–Davy*, 74 S.W.3d at 857)); *see also City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006) ("We have long held that a city cannot be estopped from exercising its governmental functions." (citations omitted)); *id.* (noting decisions from United States Supreme Court that " 'equitable estoppel will not lie against the Government as against private litigants'." (citations omitted)).

We intend no comment, however, as to whether some other form of sanctions might lie against the sort of conduct Plaintiffs allege.

49. *See, e.g., Tooke*, 197 S.W.3d at 331 (government cannot " 'be sued in her own courts without her consent, and then only in the manner indicated by that consent' " (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847))); *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 424 (1936) (government may be sued "only in the manner, place, and court or courts designated" by Legislature); *Bacon*, 411 S.W.3d at 173 ("[I]mmunity compels Texas courts to defer to the Legislature as the gatekeeper controlling when and how citizens can sue their ... government or its officers for their official acts." (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003))).

50. *See, e.g., Bacon*, 411 S.W.3d at 173 (quoting *IT–Davy*, 74 S.W.3d at 854 (quoting Tex. Gov't Code § 311.034; *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994))).

51. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see also Taylor*, 106 S.W.3d at 697 ("[W]hen construing a statute that purportedly waives sovereign immunity, we generally resolve ambi-

scope of statutory immunity waivers, as with other statutes, are questions of law that we consider de novo.[52]

The sole legislative immunity waiver on which Plaintiffs rely, aside from the UDJA's limited waiver that would permit recovery of attorney's fees incident to a substantive claim under that statute,[53] is Section 252.061 of the Local Government Code.[54] As previously indicated, Section 252.061 creates a right of action that is made subject to three important requirements and limitations. First, Section 252.061 authorizes a claim for relief on grounds that "the contract [was] made without compliance with this chapter." [55] Second, Section 252.061 authorizes the action to be brought only by two categories of potential plaintiffs: (1) "any property tax paying resident of the municipality," or (2) "a person who submitted a bid for a contract for which the competitive sealed bidding requirement applies, regardless of residency, if the contract is for the construction of public works." [56] Third, assuming an eligible plaintiff can prove that "the

contract [was] made without compliance with this chapter," Section 252.061 prescribes that said contract is "void" and authorizes the following remedy: "the performance of the contract, including the payment of any money under the contract, may be enjoined." [57]

Plaintiffs meet Section 252.061's first requirement, as their claims are founded on alleged violations of Chapter 252 in the City Defendants' contract award to Taser. But the vast majority of their claims fail to comport with either or both of the other two requirements.

■■■■ Only a single one of Plaintiffs' claims for relief seeks a remedy that Section 252.061 actually authorizes—their claim seeking an injunction barring the City Defendants from "performing any aspect of the Contract [with Taser]." In fact, the injunctive relief authorized by Section 252.061 does not extend even to the subject matter of the relief Plaintiffs seek in their second category of claims, which is calculated to secure the contract award for Utility upon the invalidation of the award

guities by retaining immunity." (citations omitted)).

**52.** *See, e.g., State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006) (citing *In re Forlenza,* 140 S.W.3d 373, 376 (Tex. 2004)).

**53.** *See Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex. 1994) (citing Tex. Civ. Prac. & Rem. Code § 37.009).

**54.** *See* Tex. Loc. Gov't Code § 252.061; *see also Carowest Land, Ltd.,* 432 S.W.3d at 532–33 (recognizing that Section 252.061 waives immunity).

In their live petition, Plaintiffs also purported to invoke the right of judicial review (and waiver of immunity) provided by Section 2001.171 of the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this

chapter."). Plaintiffs have not appeared to rely further on this asserted basis for jurisdiction, and it would be plainly unavailing in any event. Among other defects, the City's award of the contract and denial of Utility's protests were not "a final decision in a contested case" within the meaning of the APA. *See id.* § 2001.003(1) (defining "contested case" under APA as "a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing"); *see also id.* § 2001.003(7) ("state agency" under APA "means a state officer, board, commission, or department with statewide jurisdiction that makes rules or determines contested cases").

**55.** Tex. Loc. Gov't Code § 252.061.

**56.** *Id.*

**57.** *Id.*

originally made to Taser.[58] The injunctive relief authorized by Section 252.061 extends only to barring performance of an improperly procured contract and makes no mention of a further remedy of re-awarding the contract to any other vendor.

We are to presume that the Legislature made such omissions deliberately, and we are bound to give effect to the policy judgments they reflect.[59] Nor can we conclude that this plain-language reading of Section 252.061 yields an "absurd result" the Legislature could not have intended.[60] Rather, it is consistent with a primary legislative focus on protecting municipal taxpayers from the costs, inefficiencies, or other evils that may flow from non-compliant procurement procedures—a goal that does not necessarily require or imply the provision of redress for aggrieved competing vendors.

 Section 252.061's remaining requirement is also consistent with this legislative focus—aside from a narrow class of aggrieved vendors seeking contracts for "construction of public works," only resi-

dent municipal taxpayers are authorized to seek the injunctive relief authorized by the statute. And this requirement (which both sides have termed a "standing" requirement) independently presents further jurisdictional problems for Plaintiffs. Evans satisfies this "standing" requirement because he alleges (apparently without dispute) that he is a resident taxpayer of the City.[61] But Utility cannot satisfy the requirement—it is neither a resident taxpayer, nor is the contract at issue "for the construction of public works."

 Indeed, Plaintiffs make no attempt to persuade us that Utility meets the requirements for bringing a claim under Section 252.061. Instead, Plaintiffs insist that Utility's failure is ultimately immaterial because Evans is authorized to bring the claim and both he and Utility seek the same relief. Plaintiffs invoke the rule from contemporary Texas constitutional standing jurisprudence holding that where, as here, multiple plaintiffs seek the same injunctive or declaratory relief, one plaintiff's demonstration of its standing obviates any need for the others to do so.[62]

---

58. I.e., their claims seeking an injunction "requiring the [City Defendants] to award the Contract to Utility as the highest scoring responsible Offeror," a corresponding declaration that "the Contract for the RFP be awarded to Utility as the highest scoring responsive Offeror for the RFP," and an additional injunction barring the City Defendants from "cancelling the procurement for, or awarding the Contract to, anyone other than the highest scoring responsible Offeror."

59. *See, e.g., Bacon*, 411 S.W.3d at 173 (courts discern legislative intent to waive immunity only when "expressed in 'clear and unambiguous language'" (quoting *IT–Davy*, 74 S.W.3d at 854 (quoting Tex. Gov't Code § 311.034; *York*, 871 S.W.2d at 177))); *see also, e.g., TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting

words not chosen." (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))).

60. *See, e.g., Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013) ("If a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results."); *id.* at 630 ("If an as-written statute leads to patently nonsensical results, the 'absurdity doctrine' comes into play, but the bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity.").

61. *Cf. Carowest Land., Ltd.*, 432 S.W.3d at 533–34 (claimant was a property-tax-paying resident of New Braunfels).

62. *See, e.g., Patel v. Texas Dep't of Licensing and Regulation*, 469 S.W.3d 69, 77–78 (Tex. 2015) (" "[W]here there are multiple plaintiffs

But Plaintiffs misunderstand the nature of Utility's jurisdictional problem under Section 252.061.

The concern underlying the constitutional standing cases is ultimately whether a justiciable controversy exists,[63] a jurisdictional (and constitutional) prerequisite to the exercise of judicial power that one plaintiff can conceivably satisfy with respect to others similarly situated.[64] Utility's jurisdictional problem is the more specific limitation of governmental immunity, which bars suit unless and to the extent waived by the Legislature. The Legislature has chosen to authorize Evans to bring suit under Section 252.061, but not Utility. And in contrast to the situation in the constitutional standing cases, the additional participation of Utility in the action would have consequences under immunity doctrine's underlying rationales. The contemporary concern of immunity doctrine, again, is ensuring judicial deference to legislative control over not only the judicial remedies that may be imposed against government, but also the extent to which government must incur costs of defending against the claims[65]—costs that will tend

---

in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief[,] . . . the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs.' " (citing *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 152 n.64 (Tex. 2012))); *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 & n.9 (Tex. 2011) ("Because the voters seek only declaratory and injunctive relief, and because each voter seeks the same relief, only one plaintiff with standing is required." (citing *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 627 (Tex.1996) and federal standing cases including *Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006)).

**63.** *See, e.g., Norwood*, 418 S.W.3d at 580 ("Standing and other concepts of justiciability have been 'developed to identify appropriate occasions for judicial action' and thus maintain the proper separation of governmental powers. . . . 'The requirement in this State that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision . . . . A court has no jurisdiction over a claim made by a plaintiff without standing to assert it. For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical.' " (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex.

2008); 13 Charles Alan Wright, et. al., *Federal Practice and Procedure* § 3529 (3d ed. 2008))); *Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, 496 S.W.3d 175, 180 (Tex. App.–Austin 2016, no pet.) ("In general, the justiciability doctrines serve to bar Texas courts jurisdictionally from issuing advisory opinions—those that decide[ ] an abstract question of law without binding the parties, considered to be a proper function of the Executive rather than Judicial Branch—or from granting court access to persons lacking any actual, concrete injury. . . . Standing doctrine . . . focuses on whether a particular party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." (citations omitted) (internal quotation marks omitted)).

**64.** *See Patel*, 469 S.W.3d at 77–78 (noting "the reasoning" in this context "is fairly simple: if one plaintiff prevails on the merits, the same prospective relief will issue regardless of the standing of the other plaintiffs" (citing *Heckman*, 369 S.W.3d at 152 n.64; *Andrade*, 345 S.W.3d at 6)).

**65.** *See, e.g., Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 123 (Tex. 2015) (observing that sovereign immunity "was designed to guard against the 'unforeseen expenditures' associated with the government's defending lawsuits and paying judgments 'that could hamper government functions' by diverting funds from their allocated purposes" (citing *Sefzik*, 355 S.W.3d at 621; *IT–Davy*, 74 S.W.3d at 853)); *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 375 (Tex. 2006) ("A lack

to increase with the number of plaintiffs allowed in the fight. In any event, we must defer to the judgment the Legislature has made.[66]

In sum, Plaintiffs' sole claim coming within Section 252.061's waiver is Evans's claim seeking an injunction barring the City Defendants from "performing any aspect of the Contract [with Taser]." And as there is no other available applicable waiver, all of Plaintiffs' other claims—including all claims asserted by Utility—are barred by governmental immunity.

**Does the UDJA change the analysis?**

■ Plaintiffs suggest that even if certain of their claims are not authorized by Section 252.061, they may obtain substantially the same relief through the UDJA. Not so. Plaintiffs do not contend (and appropriately so) that their claims come within the UDJA's implied limited waiver of immunity that permits declaratory claims challenging the validity of ordinances or statutes.[67] And aside from this limited waiver and the one permitting ac-

companying attorney's fee awards, the UDJA "does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'"[68] Nor, similarly, can "a litigant's couching its requested relief in terms of declaratory relief . . . alter the underlying nature of the suit."[69]

■ Plaintiffs appear to reason that if the Taser contract is ultimately proven "void" through a claim within the waiver of Section 252.061, Utility, as the runner-up in the prior procurement, would automatically become "the responsible offeror whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors included in the request for proposals," and could bring a form of *ultra vires* claim to enforce the requirement that "the contract must be awarded" to it.[70] Even if we were to assume that the Taser contract would be "void" in the sense of a nullity, having

of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." (citing *IT–Davy*, 74 S.W.3d at 854)); *Texas Logos, L.P.*, 241 S.W.3d at 120 ("The contemporary rationale or justification for sovereign or governmental immunity is to protect state resources from the costs of paying judgments and defending against them so they can instead be used in accordance with the policy and budgetary directives of the legislature or local governments." (citing *Reata Constr. Corp.*, 197 S.W.3d at 375; *Tooke*, 197 S.W.3d at 331–32)).

**66.** *See, e.g., Tooke*, 197 S.W.3d at 331 (government cannot "'be sued in her own courts without her consent, and then only in the manner indicated by that consent'" (quoting *Hosner*, 1 Tex. at 769)); *Isbell*, 94 S.W.2d at 424 (government may be sued "only in the manner, place, and court or courts designat-

ed" by Legislature); *Bacon*, 411 S.W.3d at 173 ("[I]mmunity compels Texas courts to defer to the Legislature as the gatekeeper controlling when and how citizens can sue their . . . government or its officers for their official acts." (citing *Taylor*, 106 S.W.3d at 695)).

**67.** *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634–35 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code § 37.006(b); *Leeper*, 893 S.W.2d at 446).

**68.** *Sefzik*, 355 S.W.3d at 621–22 (adding that "we have consistently stated" that principle (quoting *Sawyer Trust*, 354 S.W.3d at 388 (quoting *Texas Ass'n of Bus.*, 852 S.W.2d at 444))).

**69.** *Sawyer Trust*, 354 S.W.3d at 388 (citing *Heinrich*, 284 S.W.3d at 370–71; *IT–Davy*, 74 S.W.3d at 855).

**70.** Tex. Loc. Gov't Code § 252.043(h).

never existed,[71] it remains that nothing in Chapter 252 mandates that the municipality whose contract is voided must then award the contract to the next-place competitor. To the contrary, Chapter 252 leaves open other alternatives that a municipality could deem more beneficial in vindicating taxpayer interests following a flawed procurement, such as initiating an entirely new RFP, procuring the goods or services through some other lawful means, or simply foregoing the procurement altogether.[72] These claims, in short, would fail the *ultra vires* requirement that they complain of conduct "without legal authority" or a "fail[ure] to perform a purely ministerial act," [73] and be barred by immunity.

■ Nor can Plaintiffs (or Evans individually) use the UDJA as a means of obtaining attorney's fees incident to Evans's permissible claim under Section 252.061 for an injunction barring the City Defendants from "performing any aspect of the Contract [with Taser]." Plaintiffs sought declarations that the City Defendants had "engaged in an improper procurement unauthorized by law" and that "the award of the RFP [request for proposals] to Taser by the City Council . . . is void as unauthorized by law" (i.e., their declaratory claims within the first category of their claims). The City Defendants obtained dismissal of these declaratory claims (and, in turn, the accompanying attorney's-fees claim) on the premise that the declaratory claims were redundant of Plaintiffs' injunctive claim under Section 252.061 and merely served as a vehicle for recovering attorney's fees. On appeal, the City Defendants attempt to support this conclusion by insisting that Section 252.061 itself permits the same declaratory relief that Plaintiffs seek through the UDJA, in addition to the injunctive relief Section 252.061 authorizes. The City Defendants are mistaken—Section 252.061, again, authorizes only the injunctive claim, not any declarations—but their reasoning ultimately highlights the real problem with Plaintiffs' attempt to recover attorney's fees: The declarations Plaintiffs seek are each legal conclusions already subsumed in the cause of action for injunctive relief that Section 252.061 creates. Under such circumstances, it is well established that attorney's fees cannot be recovered through the UDJA.[74] And in the absence of a right

---

**71.** *See Texas Logos, L.P.*, 241 S.W.3d at 120–21 (considering possibility that if violations of a procurement statute rendered the resultant contract "void" *ab initio*, an *ultra vires* claim to enforce the statute's requirements might be considered prospective rather than retrospective).

**72.** Nor could Plaintiffs find support for their claimed entitlement to the contract in any feature of the specific processes the City Defendants utilized. On the contrary, the RFP issued by the City Defendants included numerous explicit reservations by the City of its rights to, among other things, "reject or cancel any or all Offers," "reissue a Solicitation," or "procure any item by other means." *Cf. A & A Constr. Co. v. City of Corpus Christi*, 527 S.W.2d 833, 835 (Tex. Civ. App.–Corpus Christi 1975, no pet.) (competing bidder had no right to contract award in light of statutory predecessor to Section 252.043(d), which

gave city discretion to "reject any and all bids").

**73.** *See Heinrich*, 284 S.W.3d at 372.

**74.** *See, e.g., Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 300–01 (Tex. 2011) (noting that "an award of attorney's fees under the [UDJA] is unavailable if the claim for declaratory relief is merely incidental to other claims for relief" (citation omitted)); *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 707 (Tex. App.–Austin 2013, no pet.) (explaining that "the Texas Supreme Court's . . . decisions recognizing limitations on the use of the UDJA to recover attorney's fees where the predicate claim for declaratory relief is redundant of or incidental to a claim for relief under another statute" (citing *Jackson*, 351 S.W.3d at 300–01; *MBM Fin. Corp. v. Woodlands Operating Co.*, 292

to claim attorney's fees, Plaintiffs can show no harm from the court's dismissal of their redundant declaratory claims.

### Conclusion regarding jurisdiction

As these holdings apply to the district court's order on the City Defendants' plea to the jurisdiction, we affirm the order granting the plea in part and dismissing Plaintiffs' claims under the UDJA, but reverse and also dismiss all of Utility's claims for injunctive relief and Evans's claims for injunctive relief in the second category.[75]

### Temporary injunction and stay

Our analysis of the jurisdictional issues also largely resolves the City Defendants' appeal of the district court's temporary restraining order. The City Defendants do not complain of the portion of the temporary injunction in favor of Evans enjoining them from "performing any of their obligations arising under or in furtherance of the Contract" with Taser. Their challenge, rather, is limited to the portions of the temporary injunction that purport to grant relief to Utility and that restrain them from "cancelling or otherwise terminating [the RFP] for body worn cameras," i.e., the relief calculated to preserve the status quo as to Plaintiffs' second category of claims. Because we have held that the district court lacked jurisdiction over all of the claims that underlie these challenged portions of the temporary injunction, it follows that we reverse and vacate these portions of the order. For the same reasons, we vacate our temporary stay and

deny Plaintiffs' request to this Court for injunctive relief.

### CONCLUSION

We affirm the district court's order granting the City Defendants' plea to the jurisdiction in part and dismissing all of Plaintiffs' claims under the UDJA. We reverse the district court's order denying the plea in part and dismiss all of Plaintiffs' remaining claims except for Evans's claim under Section 252.061 seeking an injunction barring the City Defendants from "performing any aspect of the Contract [with Taser]"; i.e., the sole claim that Section 252.061 authorizes.

In turn, we reverse and vacate (1) the portion of the district court's temporary injunction that bars the City Defendants from "cancelling or otherwise terminating [the RFP] for body worn cameras" pending trial, and (2) the portion that purports to grant any other relief to Utility. We similarly lift our temporary stay of March 9, 2017, and deny Plaintiffs' request to this Court for injunctive relief.

---

S.W.3d 660, 669–70 (Tex. 2009))). *Carowest*, contrary to Plaintiffs' assertions, does not hold otherwise, and in fact strongly implies that attorney's fees would not be recoverable through a UDJA claim asserted (as the analysis assumed it could be) within the scope of an external statutory waiver. *See Carowest Land, Ltd.*, 432 S.W.3d at 531 n.121 (citing, inter alia, *Jackson*, 351 S.W.3d at 301).

**75.** I.e., the claims seeking injunctions "requiring the [City Defendants] to award the Contract to Utility as the highest scoring responsible Offeror," and barring the City Defendants from "cancelling the procurement for, or awarding the Contract to, anyone other than the highest scoring responsible Offeror."