ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 6:57 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

In the Fifteenth Court of Appeals
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 6:57:43 PM
CHRISTOPHER A. PRINE
Clerk

CECILE E. YOUNG,
in her official capacity as Executive Commissioner of
Texas Health & Human Services Commission, et al.,

Appellant,

v.

COOK CHILDREN'S HEALTH PLAN,
TEXAS CHILDREN'S HEALTH PLAN, SUPERIOR HEALTH PLAN INC.,
and WELLPOINT INSURANCE COMPANY,

Appellees.

# Motion of Wellpoint Insurance Company for Injunctive Relief Pending Appeal

Michelle Y. Ku
Texas Bar No. 24071452
mku@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000
Fax:   214.999.4667

Robert F. Johnson III
Texas Bar No. 10786400
rjohnson@foley.com
Foley & Lardner LLP
600 Congress, Suite 3000
Austin, Texas 78701
Tel:   512.542.7000
Fax:   512.542.7100

Counsel for
WellPoint Insurance Company

## Summary of Motion

This is a suit for injunctive and declaratory relief against the Executive Commissioner ("Commissioner") of the Texas Health and Human Services Commission ("HHSC"). Plaintiffs/appellees claim that the Commissioner acted ultra vires in procuring new contracts for managed care services for certain Texas public healthcare programs. The trial court agreed, finding that the Commissioner violated Texas procurement law in at least thirteen ways and ordering the Commissioner not to award, execute, or implement any new contracts or proceed further with the procurements at issue pending a trial on the merits of plaintiffs' declaratory and permanent injunction claims. The court also rejected the Commissioner's plea to jurisdiction, finding plaintiffs' claims are not barred by sovereign immunity. The Commissioner appeals the trial court's denial of her plea to the jurisdiction and grant of a temporary injunction (CR 5875-84, 5957-60) [**Appendix A**].

That appeal supersedes the temporary injunction without necessity of a bond. Tex. Civ. Prac. & Rem. Code § 6.001. Along with the three other plaintiffs/appellees listed below, Wellpoint Insurance Company asks this Court to continue the temporary injunction ordered by the trial court for the duration of this appeal. In short, during this appeal, the Commissioner must be enjoined from awarding, executing, or implementing new contracts for

managed care services in the State of Texas Access Reform ("STAR") Medicaid program, the Children's Health Insurance Program ("CHIP"), and the STAR Kids program because the intended award of any such contracts is based on an illegal procurement process that is the very subject of the parties' dispute and the specific relief sought by plaintiffs/appellees.

Wellpoint asks that this Court issue an injunction under Texas Rule of Appellate Procedure 29.3 and Government Code § 22.221(a), which authorize this Court to issue writs or orders to protect its jurisdiction—to enjoin a party from taking actions to jeopardize this Court's jurisdiction over the appeal or to protect a party from irreparable injury. An injunction is necessary to protect this Court's jurisdiction and to maintain the status quo, as the trial court did, during the pendency of this appeal.

Wellpoint therefore requests an injunction that mirrors the temporary injunction the trial court issued, and that the Commissioner asks this Court to review. **There is no specific deadline for the requested relief**. If this Court grants the requested injunction, that relief would simply continue in effect for the duration of this appeal the same status quo to which the Commissioner assented in the parties' Rule 6.6 agreement signed October 2024. [**Appendix B**].

## Statement of Facts

Wellpoint adopts the Factual and Procedural Background in motions for temporary relief filed by the other appellees:

> Appellee Superior HealthPlan Inc.'s Motion for Temporary Relief Under Rule 29.3
>
> Rule 29.3 Motion of Appellees Cook Children's Health Plan and Texas Children's Health Plan

*See* Tex. R. App. P. 9.7. The motions explain that HHSC administers publicly-funded healthcare programs in Texas, including the programs at issue in this lawsuit—STAR, CHIP, and STAR Kids; that Cecile E. Young, in her capacity as Executive Commissioner, in order to solicit proposals from MCOs—i.e., managed care organizations—to provide services in the STAR and CHIP programs, issued Request for Proposals No. HHS0011152 seeking bids from MCOs to provide the services in all of Texas's thirteen service areas; that each plaintiff is an MCO that separately participated in that bid process; and that in the course of that process the Commissioner acted beyond her statutory powers—ultra vires—in ways that threaten to irreparably harm plaintiffs/appellees, Texas program beneficiaries, and Texas taxpayers (CR 4231-86).

Wellpoint—formerly Amerigroup Insurance Company (8 RR 89)—is an MCO that submitted a proposal to provide STAR and CHIP managed care

services pursuant to the request for proposals (P. Ex. 38; P. Ex. 236). Before doing so, Wellpoint filed a "specifications" protest raising concerns about the legality of the procurement's framework and the award of contracts that would result from it (8 RR 70-72; P. Ex. 44). The Commissioner denied that protest and conducted the procurement (5 RR 111-19; 8 RR 70-79; P. Ex. 46; P. Ex. 160). When the Commissioner issued her notice of intent to award STAR and CHIP contracts, she announced her intent to award contracts for certain service areas to Wellpoint (P. Ex. 95), but Wellpoint protested the intended award of contracts because—just as Wellpoint had argued earlier in protesting the procurement's framework—it violated Texas law (8 RR 79-84; P. Ex. 44; P. Ex. 160). After the Commissioner denied that protest (8 RR 80), Wellpoint sued the Commissioner for exceeding her statutory authority and sought declaratory and injunctive relief regarding the pending and future procurements (CR 4231-86). Three other MCOs filed lawsuits, all seeking virtually identical relief (CR 3308-47, 3510-60, 4716-67).

The trial court consolidated these four lawsuits (CR 2778). All plaintiffs then sought a temporary injunction to bar the Commissioner from awarding, executing, or implementing STAR, CHIP, or STAR Kids contracts and from proceeding further with these procurements before a final judgment issued. The Commissioner filed a plea to the jurisdiction asserting that sovereign

immunity protected her actions, which she claimed were not ultra vires, and that the relief plaintiffs sought was retrospective (CR 2949-93).

Both matters were heard together in a week-long evidentiary hearing, where plaintiffs demonstrated that the Commissioner had acted ultra vires in several respects, as the trial court found in its temporary injunction. For example, the court found the Commissioner did not implement quality-of-care and cost-efficiency benchmarks in any managed care procurement—despite the unambiguous statutory requirement to do so under Government Code § 536.052(b) [recently recodified]—so the Commissioner's intended award of new STAR and CHIP contracts likewise did not give MCOs that met such benchmarks the preference that § 536.052(d) of the Code required. Indeed, HHSC staff testified that no such benchmarks had been developed, so the Commissioner never used benchmarks to give preferences in the STAR and CHIP procurement or other managed care procurements, in disregard of the relevant statutes (5 RR 197; 6 RR 42-44; 8 RR 178-85). Similarly, the court found the Commissioner's intended award of "mandatory" CHIP contracts violated Government Code § 533.004(a) and Health & Safety Code §§ 62.055, 62.155 because it erroneously applied Medicaid regulations to CHIP, a non-Medicaid product (5 RR 111-19).

In a single order supported by extensive findings and conclusions, the trial court denied the Commissioner's plea to the jurisdiction and granted plaintiffs/appellees a temporary injunction based on the Commissioner's thirteen separate ultra vires acts, any one of which the court found to be sufficient to support the injunction of the Commissioner's present and future violations of law (CR 5875-84) [Appendix A]. The injunction expressly enjoins the Commissioner from "awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with" the STAR and CHIP procurement and the pending STAR Kids procurement "or to further the procurement or contracting processes" for them in any regard (CR 5883). The Commissioner appeals (CR 5957-60).

# Argument

## I. THIS COURT SHOULD ISSUE A WRIT OF INJUNCTION TO PROTECT ITS JURISDICTION OVER THE SUBJECT MATTER OF THE APPEAL.

This Court may issue a writ of injunction to enjoin a party from taking actions that could jeopardize this Court's jurisdiction over the appeal. Tex. Const. art. V, § 6(a); Tex. Gov't Code § 22.221(a). The subject matter of this appeal is the propriety of a lawsuit and the injunctive relief sought therein to enjoin the Commissioner's ultra vires acts regarding the procurement of managed care services for the STAR, CHIP, and STAR Kids programs. An injunction is necessary to protect this Court's jurisdiction over both issues on appeal: whether the trial court properly denied the Commissioner's plea to the jurisdiction and whether it properly granted temporary injunctive relief.

As an initial matter, in the trial court the Commissioner did not dispute that sovereign immunity does not protect her if her acts were ultra vires. The doctrine of sovereign immunity generally bars suits against the State or its agencies, absent a clear waiver of immunity by the legislature. *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018). Ultra vires acts, however, are not considered acts of the State. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Thus, even absent such a waiver, a "claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in ultra vires conduct." *Houston Belt & Terminal*

8

*Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). Wellpoint filed such a lawsuit here, so sovereign immunity does not apply.

The Commissioner instead argued that the relief plaintiffs sought was retrospective relief even though courts can only grant prospective relief in ultra vires cases. However, the trial court's temporary injunction—and the subject matter of this interlocutory appeal—is *prospective* in nature, i.e., it enjoins the Commissioner from moving forward with awarding, executing, or implementing new STAR, CHIP, and STAR Kids contracts that violate the law or from proceeding further with the procurements at issue. *City of Austin v. Utility Assocs.*, 517 S.W.3d 300, 309 (Tex. App.—Austin 2017, pet. denied) (stating that relief in an ultra vires case "must be prospective in nature—i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy past violations"); *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 748 (Tex. App.—Austin 2014, pet. dism'd) (stating that "a claimant can effectively sue the State by suing, in his or her official capacity, a state official who is the decisionmaker of the relevant agency . . . for prospective relief to compel compliance with statutory or constitutional provisions"). The mere fact that the Commissioner has announced her intent to award STAR and CHIP contracts or has initiated the STAR Kids procurement does not make the relief sought retrospective.

If the trial court's temporary injunction is not continued for the duration of this interlocutory appeal, then the Commissioner could move forward with awarding, executing and implementing new contracts, which the Commissioner would then argue renders moot the entire case (and this appeal) as the Commissioner argued in a case involving the procurement of managed care services for the STAR+PLUS program. *Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 848 (Tex. App.—Austin 2020, pet. denied) (noting that "the commissioner filed a 'supplemental plea to the jurisdiction' asserting that Community Health's claims, which sought to prevent the commissioner from awarding the contracts in violation of section 533.004, had become moot because the commissioner had . . . executed and officially awarded the contracts"). Accordingly, a new injunction is needed to prevent the Commissioner from creating new facts in furtherance of her plea and to protect this Court's jurisdiction over the appeal of the trial court's denial of the Commissioner's plea and grant of the temporary injunction. *See In re BLF, LLC*, No. 03-23-00487-CV, 2023 WL 7169580, at *1 (Tex. App.—Austin Nov. 1, 2023, orig. proceeding) (issuing a writ of injunction in order to protect the court of appeals' jurisdiction over an appeal where a sale of property would cause the court of appeals to lose jurisdiction and render its judgment ineffective). Indeed, in temporary injunction cases like this one,

this Court's exclusive jurisdiction over state agency appeals is impotent if all a state official or agency need do is supersede the trial court's order without bond by appealing—and then violate the superseded order before this Court can review the merits. *See generally In re Tex. Educ. Agency*, 619 S.W.3d 679, 686 (Tex. 2021) (noting concern of real party in interest that "the legislatively mandated prohibition on counter-supersedeas" in state official or agency appeals should not bar courts' exercise of authority "to prevent [the state official or agency] from taking actions" that could jeopardize the court's jurisdiction "he invoked by filing a notice of appeal in the first instance").

## II. THIS COURT MAY TREAT THIS MOTION AS A PETITION FOR WRIT OF INJUNCTION.

Should this Court believe that a writ of injunction is proper to protect this Court's jurisdiction, Wellpoint asks that this Court treat this motion as a petition for writ of injunction under Rule 52 and allow Wellpoint to correct any technical defects in the papers as this Court may deem necessary to properly present the facts and issues. *See* Tex. R. App. P. 9.4(k); *In re Smith*, 192 S.W.3d 564, 568 (Tex. 2006) (treating motion as original proceeding).

## III. ALTERNATIVELY, THIS COURT SHOULD ISSUE A RULE 29.3 ORDER TO PROTECT THE RIGHTS OF PARTIES TO THE APPEAL.

### A. Because the State appeals from interlocutory orders, relief under Rule 29.3 is warranted.

This is an appeal from a temporary injunction, as authorized by Civil Practice & Remedies Code § 51.014(a)(4), and from the denial of a plea to the jurisdiction, as authorized by § 51.014(a)(8) of the Code. These rulings are interlocutory orders. In appeals from interlocutory orders, courts of appeals have authority to issue "temporary orders necessary to preserve the parties' rights until disposition of the appeal." Tex. R. App. P. 29.3.

Rule 29.3 authorizes such relief even in cases where, pursuant to Civil Practice & Remedies Code § 6.001, the State of Texas (or a state agency or officer) can supersede the temporary injunction merely by filing a notice of appeal. *See Tex. Educ. Agency*, 619 S.W.3d at 692. So Rule 29.3 relief may properly issue as to the Commissioner's appeal.

As the Third Court of Appeals explained in *Texas Education Agency v. Houston ISD*, 609 S.W.3d 569 (Tex. App.—Austin 2020, no pet.), Rule 29.3 is a mechanism for exercising courts of appeals' "inherent power to prevent irreparable harm to parties properly before us pursuant to our appellate jurisdiction in an interlocutory appeal." *Id.* at 578. "Rule 29.3 expressly contemplates that such relief is directly available in the court of appeals." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 89 (Tex. 2019); *Tex. Health &*

*Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2021 WL 2371356, at *5 (Tex. App.—Austin June 9, 2021, no pet.) (same).

Under Rule 29.3, in order to protect the rights of parties to the appeal, the courts of appeals may enjoin action by state agencies that are parties to the appeal. For that reason, the Supreme Court of Texas declined to issue a writ of mandamus to vacate a Rule 29.3 injunction against the Department of Family & Protective Services. *In re Abbott*, 645 S.W.3d 276, 282 (Tex. 2022). Similarly, the Third Court of Appeals recently issued Rule 29.3 relief forbidding certain state agencies from initiating further administrative proceedings until the appeal was resolved. *Tex. Educ. Agency v. A+ Tex. Teachers*, No. 03-23-00318-CV, 2023 WL 4981604, at *3 (Tex. App.—Austin Aug. 4, 2023, order)

## B.    The standard for injunctive relief applies under Rule 29.3.

Rule 29.3 allows an appellate court "to stay a party's actions while an appeal proceeds." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (discussing the standard for relief under Rule 52.10 and Rule 29.3). In the alternative to a writ of injunction, pursuant to Rule 29.3, Wellpoint asks that this Court enjoin the Commissioner during this appeal from awarding, executing, or implementing new STAR, CHIP, and STAR Kids contracts or proceeding

further with the procurements at issue—i.e., the very subject of this lawsuit and this appeal.

"A stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *Id.* Therefore, "appellate courts asked to issue temporary relief pending appeal should make a preliminary inquiry into the likely merits of the parties' legal positions," "the injury that will befall either party depending on the court's decision" (i.e. whether the party seeking relief "will suffer irreparable harm if relief is not granted"), and "the harm that other parties or the public will suffer if relief is granted—as well as any potential injury to non-parties caused by granting or denying relief." *Id.*

## C.  Wellpoint satisfies the injunctive relief standard here.

Wellpoint adopts the arguments herein of the other plaintiff MCOs, who also request an injunction barring the Commissioner from awarding, executing, or implementing new contracts or proceeding further with the procurements at issue.

### 1. *Wellpoint is likely to succeed on the appeal of the Commissioner's plea to the jurisdiction.*

Wellpoint is likely to succeed on the Commissioner's appeal of the plea to the jurisdiction. An order denying a plea to the jurisdiction is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.

2004). The plea can challenge the sufficiency of the claimant's pleadings or the existence of jurisdictional facts. *Id.* at 226–28. In the present lawsuit, the Commissioner only challenges the sufficiency of the pleadings.

This Court reviews the matter by liberally construing all allegations in the plaintiff's favor. *See Houston Belt & Terminal Ry.*, 487 S.W.3d at 160. Wellpoint pleads sufficient facts authorizing an ultra vires claim; the petition pleads that, in several regards, the Commissioner acted outside the bounds of the listed governing statutes and regulations. If an official acts outside the law, the law deems that the official is not acting on behalf of the state and the state's immunity does not extend to such acts. *See Phillips v. McNeill*, 635 S.W.3d 620, 628 (Tex. 2021); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). "Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Wellpoint's petition—which alleges substantial acts lacking proper statutory authority—is sufficient (CR 4231-86).

Wellpoint seeks only declaratory relief and prospective injunctive relief (CR 4231-86 ¶¶ 1, 3, 9, 114-40; 8 RR 91-92). Wellpoint seeks no damages. Nor does it seek cancellation of any procurements or executed contracts. It

seeks an order that the Commissioner "cease and desist" from present and future ultra vires acts.

Moreover, at the hearing the MCO plaintiffs offered evidence showing that the Commissioner is administering the procurements at issue in conflict with governing law and is disregarding or violating numerous statutory mandates, including Government Code § 536.052, which obligates the Commissioner to implement quality-of-care and cost-efficiency benchmarks in managed care procurements and give MCOs that meet such benchmarks the statutorily-required preference (5-8 RR). The Commissioner committed—and threatens to continue to commit—ultra vires acts.

2. *Wellpoint is likely to succeed on the Commissioner's appeal of the temporary injunction.*

Wellpoint is also likely to succeed on the Commissioner's appeal of the temporary injunction. On this point, Wellpoint adopts the arguments in the other Rule 29.3 motions—i.e., *Appellee Superior HealthPlan Inc.'s Motion for Temporary Relief Under Rule 29.3* and the *Rule 29.3 Motion of Appellees Cook Children's Health Plan and Texas Children's Health Plan.*

3. *Wellpoint will incur irreparable harm should the Commissioner move forward with the new contracts or proceed further with the subject procurements.*

The Supreme Court of Texas has noted that an "injury is irreparable if the injured party cannot be adequately compensated in damages or if the

16

damages cannot be measured by any certain pecuniary standard." *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020). However, "Texas has long recognized that sovereign immunity protects the State of Texas against lawsuits for damages unless the State consents to be sued." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022).

Here, no such consent exists. Moreover, money damages are not available in an ultra vires action. The only remedies available "are prospective injunctive and declaratory relief"—i.e., precisely the relief Wellpoint seeks in this ultra vires lawsuit. *Hollins*, 620 S.W.3d at 410.

Wellpoint's irreparable harm, however, does not end there. Specifically, and as Wellpoint showed at the hearing through testimony of Wellpoint President and CEO Greg Thompson, unless the Commissioner is enjoined from awarding, executing, or implementing the unlawfully-procured intended award of new contracts or proceeding further with the subject procurements:

> ● Almost 380,000 current Wellpoint members will be forced to change their health plan, thereby losing access to their existing Wellpoint provider network.

> ● Wellpoint has suffered and will continue to suffer the poaching by other MCOs of Wellpoint's highly-trained employees—and during the review and transition period, which the Commissioner has stated will take at least a year for the intended new STAR and CHIP contracts, Wellpoint still must provide

17

uninterrupted healthcare to its members, and its ability to do so will be substantially jeopardized if there are key staff vacancies.

● Wellpoint will be forced to consider substantial reductions in and/or relocations of its existing over 1,200-person workforce dedicated to the Texas Medicaid programs.

● Wellpoint has already suffered—and it will continue to suffer—difficulty in retaining its existing, robust provider network in the impacted service areas. Maintaining the network of healthcare providers is critical to Wellpoint's commitment to continuing to provide high-quality, cost-efficient healthcare for the duration of its existing contracts. Worse yet, Wellpoint has learned that some providers are even informing members that Wellpoint will no longer be providing services in areas impacted by the Commissioner's intended award of new STAR and CHIP contracts and are encouraging members to switch plans.

(8 RR 92-96).

There is no legal remedy that can fully compensate Wellpoint for the loss of members and the harm to (a) Wellpoint's business resulting from the intended award of new contracts and (b) Wellpoint's ability to compete in a fair and lawful process in future procurements—including the ongoing STAR Kids procurement. Moreover, the harm to Wellpoint is imminent. The Commissioner did not follow Texas statutes in the STAR and CHIP procurement, but she nevertheless intends to award, execute, and implement unlawful contracts from that procurement. She does not intend to voluntarily correct her unlawful course of action for future procurements, including the ongoing STAR Kids procurement, despite the trial court's findings that she violated Texas procurement law in at least thirteen (13) different ways.

18

*4. The public will suffer as well.*

In several regards the public will suffer if the Commissioner is not enjoined from awarding, executing, or implementing new STAR, CHIP, and STAR Kids contracts that violate the law or from proceeding further with the procurements at issue. More than 1.5 million Texans—including 43% of the total STAR and CHIP population, and mostly children—will have to change their health plans. The resulting harms to those beneficiaries—who have no adequate remedy at law against the Commissioner—include: (a) confusion from the difficulties in informing them of the changes in available health plans; (b) the disruption of their access to healthcare; and (c) administrative burdens of finding new health plans or new health care providers (CR 5882-83). Those beneficiaries will also lose any meaningful choice of MCOs when the Commissioner replaces proven high-performing vendors like Wellpoint with unqualified or underqualified MCOs. Moreover, the harm to the public will continue and extend beyond the subject procurements given the Commissioner does not intend to correct her course of action for future procurements.

*5. The Commissioner will incur no injury or prejudice.*

Unlike plaintiffs/appellees and the public, the Commissioner will incur no injury or prejudice if the injunction is granted. At most, the Commissioner would experience some delay but even that would be innocuous because the

Commissioner could simply extend the existing MCO contracts for the subject programs—just as the Commissioner has done time and time again when cancelling previous managed care procurements—so those programs could continue, without any interruption of services (5 RR 180-81). Indeed, as testimony at the temporary injunction hearing confirmed, the MCOs providing STAR and CHIP services at this time are doing so under contract extensions due to the Commissioner's cancellation of previous procurements (5 RR 180-81; 8 RR 96-97). As for the STAR Kids program, the procurement is ongoing and the Commissioner has not yet announced her intent to award new contracts. Simply put, there is no valid reason why the existing contracts could not be extended while this Court has jurisdiction over this appeal.

## D. A Rule 29.3 order can issue to maintain the status quo.

The Commissioner's notice of appeal automatically supersedes the trial court's temporary injunction. Tex. Civ. Prac. & Rem. Code § 6.001. Yet just as in the *Texas Education Agency* case, "[i]nstead of preserving the status quo, . . . suspension of the temporary injunction would, in this case, have the contradictory effect of permitting the status quo to be altered." 619 S.W.3d at 683–84. For that reason the Supreme Court of Texas held that the Rule 29.3 order in that case, which had the effect of reinstating the trial court's

suspended injunction, properly maintained the status quo, despite the state agency's right to an automatic supersedeas. *Id.* at 686-90.

Such relief is warranted here: a Rule 29.3 order enjoining the Commissioner from awarding, executing, or implementing new STAR, CHIP, and STAR Kids contracts that violate the law or from proceeding further with the procurements at issue will maintain the status quo, not alter it. In requesting a new injunction, Wellpoint does not ask this Court to reopen or cancel any procurement process, or even to invalidate any executed contracts. *See Utility Assocs.*, 517 S.W.3d at 311-12. Instead, Wellpoint merely asks that the status quo be maintained while the Court determines the merits of this interlocutory appeal. *See, e.g.*, *Sacred Oak Med. Ctr.*, 2021 WL 2371356, at *7 ("Accordingly, we grant Sacred Oak's request for Rule 29.3 temporary relief and order that the trial court's temporary injunction is reinstated to preserve the parties' rights until the disposition of this appeal.").

## IV. TIME FRAME FOR THE RELIEF REQUESTED.

Eight months ago, while this appeal was pending, plaintiffs/appellees and the Commissioner executed an agreement under Rule 6.6 whereby the Commissioner agreed to abide by the trial court's injunction during the legislative session that has just ended. *See* Appendix B. The same MCOs who

21

were providing STAR and CHIP services under existing contracts at the time continue to do so and those contracts, which had already been extended, have been further extended by the Commissioner through summer 2026.

Under the Rule 6.6 agreement, the Commissioner also agreed to continue to abide by the trial court's injunction until "a ruling from the appellate court on any request for temporary orders under TRAP 29.3 filed within 7 days" of the reinstatement of this appeal after abatement. Appendix B ¶ 2(b). The Commissioner further agreed to comply with the trial court's injunction pending a decision by the Supreme Court of Texas in any original proceeding challenging such appellate court ruling (if the proceeding is filed within seven days of that appellate court ruling). Appendix B ¶ 2(c).

As the Commissioner's agreement reflects, even if this appeal were to last for several more months, there can be little doubt that maintaining the status quo for the near future will not harm the State of Texas or its people who depend on proper management of Texas's public healthcare programs.

# Prayer

Wellpoint asks this Court to issue a writ of injunction or, alternatively, a Rule 29.3 order, continuing the trial court's temporary injunction, up until the mandate issues in this appeal, so that the Executive Commissioner of the Texas Health & Human Services Commission is enjoined from awarding, executing, or implementing new STAR, CHIP, and STAR Kids contracts that violate the law or from proceeding further with the procurements at issue.

Respectfully submitted,

*/s/ Michelle Y. Ku*

Michelle Y. Ku
Texas Bar No. 24071452
mku@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000
Fax:  214.999.4667

Of counsel:
Benjamin J. Grossman
Florida Bar No. 92426
bjgrossman@foley.com
106 E. College Ave., Suite 900
Tallahassee, Florida 32301
Tel:   850.222.6100
Fax:  850.561.6475

Robert F. Johnson III
Texas Bar No. 10786400
rjohnson@foley.com
Foley & Lardner LLP
600 Congress, Suite 3000
Austin, Texas 78701
Tel:   512.542.7000
Fax:  512.542.7100

Counsel for
WellPoint Insurance Company

## Certificate of Conference

I certify that, through email exchanges during **July 3-10, 2025**, counsel for the parties conferred with regard to the relief requested herein, and counsel for the Executive Commissioner of the Texas Health & Human Services Commission stated that the Commissioner will **oppose** this request for relief; counsel for Aetna Better Health of Texas Inc. stated that, "assuming HHSC opposes the motion," Aetna will **oppose** this request for relief; and counsel for Molina Healthcare of Texas Inc. stated that Molina will **oppose** this request for relief "but at this time does not intend to file anything."

*/s/ Michelle Y. Ku*
Michelle Y. Ku


## Certificate of Service

I certify that this document was served **July 10, 2025**, by delivery to all registered counsel upon filing this document through the electronic filing manager using counsel's electronic filing service provider, pursuant to Texas Rule of Appellate Procedure 9.5.

*/s/ Michelle Y. Ku*
Michelle Y. Ku

# Appendix A

Temporary Injunction and Order
Denying Defendant's Plea to the Jurisdiction

(CR 5875-84)

CAUSE NO. D-1-GN-24-003839

| | | |
|---|---|---|
| COOK CHILDREN'S HEALTH PLAN; | § | IN THE DISTRICT COURT |
| TEXAS CHILDREN'S HEALTH PLAN; | § | |
| SUPERIOR HEALTHPLAN, INC.; and | § | |
| WELLPOINT INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CECILE ERWIN YOUNG, in her official | § | |
| capacity as Executive Commissioner of the | § | |
| Texas Health and Human Services | § | |
| Commission, | § | |
| | § | |
| **Defendant.** | § | **353rd JUDICIAL DISTRICT** |

## TEMPORARY INJUNCTION AND ORDER DENYING
## DEFENDANT'S PLEA TO THE JURISDICTION

Before the Court are the Applications for Temporary Injunction (the "Applications") filed by Plaintiffs Cook Children's Health Plan ("Cook Children's"), Texas Children's Health Plan ("TCHP"), Superior HealthPlan, Inc. ("Superior"), and Wellpoint Insurance Company ("Wellpoint," and collectively, "Plaintiffs"); and the Plea to the Jurisdiction (the "Plea") filed by Defendant Cecile Erwin Young ("Defendant"), in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"). After considering Plaintiffs' Applications and Defendant's response; Defendant's Plea and Plaintiffs' responses; the pleadings and attached evidence in these consolidated cases (Nos. D-1-GN-24-003839, D-1-GN-24-003874, D-1-GN-004059, and D-1-GN-24-004327); the parties' prehearing briefing; the evidence admitted in the record and adduced at the hearing held on September 30, October 1, October 2, and October 4, 2024; applicable authorities; the arguments of counsel, and all other matters properly before the Court, the Court DENIES Defendant's Plea and GRANTS Plaintiffs' Applications.

Page 1 of 10

The Court makes the following findings:

1.     The Court has subject-matter jurisdiction over the claims in these consolidated cases because Plaintiffs have alleged and offered evidence demonstrating that Defendant will act *ultra vires* in awarding, executing, and implementing the contracts arising out of Request for Proposals No. HHS0011152 (the "RFP" or "STAR & CHIP RFP") because she has acted *ultra vires* in administering the RFP. Plaintiffs properly seek only prospective relief—specifically, injunctive relief prohibiting Defendant from awarding, executing, or otherwise implementing the intended RFP contracts and thus preventing further unlawful acts in connection with Defendant's procurement or contracting processes, as well as accompanying declaratory relief. Accordingly, sovereign immunity does not bar Plaintiffs' claims or deprive the Court of subject-matter jurisdiction.

2.     The Court has personal jurisdiction over the parties in these consolidated cases.

3.     Venue is proper in this Court.

4.     Through the RFP, Defendant sought to procure managed care services for the State of Texas Access Reform ("STAR") Medicaid program and the Children's Health Insurance Program ("CHIP," and together with STAR, "STAR & CHIP").

5.     Plaintiffs allege that Defendant administered the RFP in a manner that violates Texas law and that, consequently, any award, execution, or implementation of the intended STAR & CHIP managed care contracts that Defendant announced on March 7, 2024, will constitute *ultra vires* acts.

6.     Plaintiffs have established a cause of action against Defendant and a probable right to the relief sought on their claims that Defendant has violated and, unless enjoined, will continue to violate statutory and regulatory requirements applicable to the RFP.

7.     Specifically, Plaintiffs have established that Defendant has violated and will continue to violate the Texas Government Code, Texas Health and Safety Code, and Texas Administrative Code in procuring managed care contracts for STAR & CHIP in Texas, and that any award, execution, or implementation of Defendant's intended contract awards would be unlawful, because:

- Defendant's intended contract awards will fail to give preference to managed care organizations ("MCOs") that have significant participation in their provider networks from each healthcare provider in the region who has traditionally provided care to Medicaid and charity care patients as required by Texas Government Code § 533.003(a)(1);

- Defendant's intended contract awards will fail to give preference to MCOs that have successfully implemented quality initiatives as required by Texas Government Code § 536.052(a) and (d);

- Defendant has failed to develop and implement the cost-efficiency and quality of care benchmarks mandated by Texas Government Code § 536.052(b) despite being subject to an obligation to do so for over a decade. Defendant's intended contract awards will likewise fail to give preference to MCOs that have met such benchmarks as required by Texas Government Code § 536.052(d);

- Defendant's intended contract awards will fail to consider MCOs' past performances as required by Texas Government Code § 2155.144;

- Defendant's intended contract awards will fail to evaluate and certify that MCOs are reasonably able to fulfill the terms of the STAR contract as required by Texas Government Code § 533.0035 and to review MCOs to confirm their ability to fulfill the requirements of the CHIP contract as required by Texas Health & Safety Code § 62.051(e);

- In August 2023 and again in October 2023, Defendant wrongfully disclosed the RFP proposals of Plaintiffs and other respondents—with the August disclosure recipients including legal counsel for Aetna, one of the competing respondents, while the procurement was ongoing and prior to completion of the oral presentations—thus, destroying any integrity of the procurement process and creating an unlevel playing field that cannot ensure fair consideration of all proposals and is far from consistent, uniform, and transparent as required by 1 Texas Administrative Code §§ 391.101 and 391.209;

- Defendant's intended contract awards will fail to implement the Medicaid managed care program in a manner that improves the health of Texans by promoting

continuity of care and provides a medical home for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to reduce administrative and other nonfinancial barriers for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to consider the need to use different managed care plans to meet the needs of different populations as required by Texas Government Code § 533.003(a)(3);

- Defendant's intended contract awards will unlawfully award mandatory CHIP contracts to MCOs to which Defendant intends to award mandatory STAR contracts in violation of Texas Health and Safety Code §§ 62.055 and 62.155;

- Defendant's intended award of mandatory CHIP contracts will fail to give consideration to statutorily required factors, including those under Texas Government Code § 533.003, in violation of Texas Government Code § 533.004(a);

- Defendant's continuing practice of denying relevant information about a procurement to bidders until after the deadline to submit a bid protest violates the Due Course of Law provision of Article I, Section 13 of the Texas Constitution by not providing a meaningful bid protest process after promising one in 1 Texas Administrative Code Chapter 391; and

- Defendant's continuing practice of refusing to consider as untimely any information submitted in supplemental protests and/or after the protest filing deadline is inconsistent with the procedural protections promised to protestants in bid protest rules that require consideration of a protest or appeal submitted after the filing deadline when good cause for delay is shown under 1 Texas Administrative Code § 391.307(d)(1).

8. These statutory and regulatory violations, each singly and together collectively, have resulted in intended contract awards that will be invalid and unlawful, and the further execution and implementation of such intended contract awards will be *ultra vires* acts.

9. Furthermore, Defendant is currently evaluating bids for STAR Kids, a separate Texas Medicaid managed care program, through Request for Proposals No. HHS0013071 (the STAR Kids RFP"). The procurement processes in the STAR & CHIP RFP and the STAR Kids RFP are substantively identical. Plaintiffs have demonstrated that Defendant has no intention of

voluntarily correcting her course of action for future procurements, including altering the processes and procedures used in administering the STAR Kids RFP. The resulting STAR Kids contract awards will therefore also violate statutory and regulatory requirements and be *ultra vires*.

10. Plaintiffs have established a probable right to relief and that Defendant's award, execution, and implementation of the intended, unlawfully procured STAR & CHIP contracts will, if not enjoined, cause Plaintiffs to suffer imminent and irreparable injury.

11. Cook Children's has established that execution and implementation of the contracts would result in irreparable harm to Cook Children's because:

- The loss of STAR & CHIP contracts threatens Cook Children's financial viability and might lead to the forced wind-down of the entity;

- Cook Children's participation in the STAR Kids program is in jeopardy because the larger STAR & CHIP contracts provide economies of scale to limit losses from STAR Kids;

- Cook Children's 100,000-plus STAR & CHIP members will be forced to change to different health plans from different companies, risking disruption to the members' healthcare and their access to their current primary care providers, specialty care providers, or both;

- Cook Children's has suffered immediate operational disruptions, including hiring difficulties and the delay of needed internal projects;

- Cook Children's can no longer negotiate a new pharmacy benefits contract alongside other Texas-only Medicaid plans and consequently will need to pay more for pharmaceuticals;

- Cook Children's 375 employees are at risk of losing their jobs—both the 70% of employees who focus on STAR & CHIP and the 30% who focus on STAR Kids; and

- New STAR & CHIP entrants in the Tarrant Service Area will likely poach Cook Children's experienced employees before the new contracts go into effect—thus threatening Cook Children's STAR & CHIP operations while it is still required to provide services under its current contracts.

12. TCHP has established that execution and implementation of the contracts would result in irreparable harm to TCHP because:

- TCHP's 425,000 STAR & CHIP members will be forced to change their health plans, impacting their access to care;

- TCHP has suffered and will continue to suffer disruptions in workforce—threatening the future viability of the health plan—as employees voice concern about job security in light of the intended contract awards;

- TCHP's 650 employees are at risk of losing their jobs, impacting the financial health of its entire Texas Children's Health Care System beyond that of the health plan;

- TCHP has already suffered and will continue to suffer the poaching of its well-trained employees by other MCOs—further endangering its operations while it remains under contract with HHSC;

- TCHP will lose members and providers, further threatening the viability of the health plan and confusing members and providers;

- TCHP has and will suffer damage to its reputation and goodwill; and

- TCHP's participation in the STAR Kids program is at risk because the larger STAR & CHIP contracts are needed to provide economies of scale to limit losses from STAR Kids. If TCHP loses its STAR Kids contract, its 26,000 STAR Kids members would need to change their health plans, thereby adversely impacting those members' access to care, adversely impacting TCHP's workforce, adversely impacting TCHP's ability to operate and damaging TCHP's reputation and goodwill.

13. Superior has established that execution and implementation of the contracts would result in irreparable harm to Superior because:

- Superior will experience a reduction in the number of STAR & CHIP members it serves today, forcing members to change plans even before the operational start date of the new contracts;

- Superior will need to begin reducing its workforce just as new MCO entrants and MCOs expanding their membership will seek to poach Superior's employees, who are already grappling with the uncertainty of their jobs in light of the intended awards;

- Providers will be less likely to contract with Superior as contract renewals are being negotiated over the next few months and Superior's leverage in provider contract negotiations will be substantially diminished;

Superior has made substantial investments in partnerships that promote HHSC's value-based care priorities. These partnerships involve risk-sharing agreements



Page 5880

between Superior and the partner entities and have been built to scale over time. Superior will lose the benefit of its initial investments in these partnerships; and

- Superior's ability to provide the same level of service currently provided under existing STAR & CHIP contracts through the August 31, 2025, expiration date will be diminished due to workforce challenges that would be caused by execution of the STAR & CHIP contracts, which will impact Superior's operations and cause it to suffer reputational damage.

14.     Wellpoint has established that execution and implementation of the contracts would result in irreparable harm to Wellpoint because:

- Almost 380,000 current Wellpoint members will be forced to change their health plan, thus losing access to their existing Wellpoint provider network;

- Wellpoint will be forced to consider substantial reductions in and/or relocations of its existing 1,200-plus-person workforce dedicated to the Texas Medicaid programs;

- Wellpoint has already suffered and will continue to suffer the poaching of its highly trained employees by other MCOs. During the review and transition period, which HHSC has stated will take at least a full year, Wellpoint must continue to provide uninterrupted healthcare to its members, and its ability to do so will be substantially jeopardized if there are key staff vacancies;

- Wellpoint has already suffered and will continue to suffer difficulty retaining its existing, robust provider network in the impacted service areas. Maintaining its network of healthcare providers is critical to Wellpoint's commitment to providing high-quality, cost-efficient healthcare for the entire duration of its existing contracts. Worse yet, Wellpoint has learned that some providers are informing members that Wellpoint will no longer be providing STAR & CHIP services in impacted areas and are encouraging them to switch plans on the basis of Defendant's intended contract awards;

- Wellpoint has made significant investments in service areas that it will be forced to exit and has longstanding provider partnerships with alternative payment models that were developed and built to scale over multiple years. Wellpoint will lose the benefit of its investments in those service areas and partnerships.

- There is no legal remedy that can fully compensate Wellpoint for (1) the loss of its members, (2) the harm to its business resulting from the intended, unlawfully procured contract awards, and (3) the harm to its ability to compete in a fair and lawful procurement process in future procurements; and

The harm to Wellpoint is imminent because Defendant did not follow the requirements of Texas law in procuring the STAR & CHIP contracts but



nevertheless intends to execute and begin implementing the intended, unlawfully procured contract awards. In addition, the harm to Wellpoint is imminent as Defendant does not intend to correct her unlawful course of action for future procurements or the ongoing STAR Kids RFP.

15. Plaintiffs have also presented evidence that they will begin losing STAR & CHIP members now, even though operations under the intended STAR & CHIP contract awards are not scheduled to start until September 1, 2025. Providers are already informing Plaintiffs' members that Plaintiffs will no longer be providing STAR & CHIP services in certain service areas of the state and are encouraging members to switch plans. The confusion among providers and members alike will only worsen if the intended contract awards are executed notwithstanding the pending challenge to their legality.

16. Money damages are not adequate compensation because the harms Plaintiffs will suffer cannot be measured by any certain pecuniary standard. Furthermore, Plaintiffs cannot be adequately compensated in damages because Defendant is immune from suit for damages and any limited waiver of immunity is insufficient to compensate for Plaintiffs' harms.

17. The harms to Plaintiffs outweigh any potential harms to Defendant or HHSC that would result from preserving the status quo during the pendency of these consolidated cases. Neither Defendant nor HHSC would be harmed if the execution and further implementation of the intended STAR & CHIP contracts are delayed given that (1) operations under the intended contract awards are not scheduled to start until September 1, 2025, and (2) HHSC has previously delayed the RFP several times and was able to continue providing coverage through the current STAR & CHIP contracts by extending the contracts in effect at the time.

18. The public will not suffer harm if a temporary injunction is granted but will suffer harm if Defendant executes and implements the intended, unlawfully procured contract awards. The intended contract awards will impose significant harm and confusion on millions of Texas's

STAR & CHIP members. More than 1.5 million Texans, mostly children—and 43% of the total STAR & CHIP population—will be forced to change health plans. This in turn would cause significant harms to those beneficiaries, for which there is no adequate remedy at law available against Defendant, including:

- Confusion among those beneficiaries due to difficulties in informing them of the change in available health plans;

- Disruption to those beneficiaries' access to care and continuity of care, thereby threatening the medical care and the very health and welfare of those beneficiaries; and

- Administrative burdens of finding new health plans and potentially new healthcare providers.

19.     The injunctive relief Plaintiffs request is narrow in scope and tailored to prohibit Defendant from continuing to act *ultra vires*. The balance of equities and public interest weigh in favor of granting Plaintiffs' requested injunctive relief.

Accordingly, it is therefore ORDERED that Defendant's Plea to the Jurisdiction is DENIED.

It is further ORDERED that Plaintiffs' Applications for Temporary Injunction are GRANTED. The Court ORDERS that:

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from further proceeding with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP.



IT IS FURTHER ORDERED that Defendant shall provide notice of this Temporary Injunction to her officers, agents, servants, employees, and attorneys, as well as any persons or entities in active concert or participation with Defendant.

IT IS FURTHER ORDERED that Plaintiffs' bond or cash deposit in lieu of bond is set in the amount of $1,000.

IT IS FURTHER ORDERED that, on the filing by Plaintiffs of the bond and on approving the bond according to law (or the cash deposit in lieu of bond), the Clerk shall issue a Temporary Injunction in conformity with the law and the terms of this order.

IT IS FURTHER ORDERED that this Temporary Injunction shall not expire until final judgment in this case is entered or this case is otherwise dismissed by this Court.

IT IS FURTHER ORDERED that the trial on Plaintiffs' *ultra vires* claims seeking declaratory relief, permanent injunctive relief, and mandamus relief is set for November 3, 2025.

SIGNED on October 4, 2024.

_____
JUDGE PRESIDING

**Judge Laurie Eiserloh**
**455th District Court**

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 11/01/2024 09:28:21

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

169317251.2

# Appendix B

Rule 6.6 Agreement

Exhibit A – Joint Motion to Abate Appeal (Oct. 29, 2024)

The following is an Agreement executed by and among the undersigned parties in connection with the interlocutory appeal filed by Cecile Young, in her official capacity as Executive Commissioner of the Texas Health & Human Services Commission ("Defendant") in the Fifteenth Court of Appeals as Cause No. 15-24-00114-CV (the "Appeal") from Travis County Cause No. D-1-GN-24-003839, consolidated with Travis County Cause Nos. D-1-GN-24-003874, D-1-GN-24-004059, and D-1-GN-24-004327 (the "Consolidated Lawsuit"). This Agreement is effective upon execution by counsel for the following: Defendant; Cook Children's Health Plan; Texas Children's Health Plan; Superior HealthPlan, Inc.; and Wellpoint Insurance Company (collectively, the "Parties").

Through the Appeal, Defendant seeks review of the trial court's October 4, 2024, order denying her Plea to the Jurisdiction and granting Plaintiffs' Motions for a Temporary Injunction (the "Temporary Injunction Order"). Now the Parties agree as follows:

1. The Parties shall file a Joint Motion to Abate in the Appeal. In it, the Parties will ask the appellate court to abate the Appeal until 30 days after the end of the 89th Regular Session of the Texas Legislature. A copy of this Agreement will be attached as an exhibit to the Joint Motion to Abate.

2. Notwithstanding any supersedeas rights, Defendant, the Texas Health & Human Services Commission, and all employees and agents of the Texas Health & Human Services Commission (collectively, "HHSC") will comply with the terms of the Temporary Injunction Order until the latest of (a) 30 days after the end of the 89th Regular Session of the Texas Legislature, regardless of the appellate court's ruling on the Joint Motion to Abate; (b) a ruling from the appellate court on any request for temporary orders under TRAP 29.3 filed within seven days of the Appeal's reinstatement; or (c) disposition of any mandamus proceeding in the Texas Supreme Court reviewing a ruling on a request described in (b) above, provided that the proceeding is filed within seven days of such ruling.

3. HHSC may complete the consensus scoring on the written proposals in RFP No. HHS0013071 (the "STAR Kids RFP"), provided HHSC takes no other action with respect to the STAR Kids RFP.

4. Should the Consolidated Lawsuit return to the trial court before the end of the 89th Regular Session of the Texas Legislature, the Parties agree to file a Joint Motion to Abate in the Consolidated Lawsuit, asking those proceedings be abated until 30 days after the end of the 89th Regular Session of the Texas Legislature.

5. Additionally, the Parties agree to file a Joint Motion to Abate in each of the PIA lawsuits filed as Cause Nos. D-1-GN-24-003564, D-1-GN-24-002509, and D-1-GN-24-002569, which the Parties agree shall stay abated until at least thirty days after the end of the 89th Regular Session of the Texas Legislature.

6. The Parties agree that this Agreement will apply to any successor to Defendant.

- 1 -


EXHIBIT A

7. In the event that the Appeal is successful and all claims in the Consolidated Lawsuit are dismissed, following exhaustion of all appellate proceedings, then this Agreement shall be deemed terminated and no Party is bound by its terms.

Agreed:

_____
Matthew Gordon, Counsel for Cook Children's Health Plan

_____
Meghan McCaig, Counsel for Superior HealthPlan, Inc.

_____
Paul Trahan, Counsel for Texas Children's Health Plan

_____
Rob Johnson, Counsel for Wellpoint Insurance Company

_____ Oct. 24, 2024
Thomas Bevilacqua, Counsel for Cecile E. Young, in her Official Capacity as Executive Commissioner of HHSC

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 103003455
Filing Code Description: Motion
Filing Description: Motion of Wellpoint Insurance COmpany for Injunctive Relief Pending Appeal
Status as of 7/11/2025 7:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 7/10/2025 6:57:43 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 7/10/2025 6:57:43 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 7/10/2025 6:57:43 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 7/10/2025 6:57:43 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 7/10/2025 6:57:43 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |
| David Johns | | david@cobbjohns.com | 7/10/2025 6:57:43 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 7/10/2025 6:57:43 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 7/10/2025 6:57:43 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 7/10/2025 6:57:43 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 7/10/2025 6:57:43 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/10/2025 6:57:43 PM | ERROR |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 103003455
Filing Code Description: Motion
Filing Description: Motion of Wellpoint Insurance COmpany for Injunctive Relief Pending Appeal
Status as of 7/11/2025 7:15 AM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/10/2025 6:57:43 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 7/10/2025 6:57:43 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 7/10/2025 6:57:43 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 7/10/2025 6:57:43 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 7/10/2025 6:57:43 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 7/10/2025 6:57:43 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 7/10/2025 6:57:43 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 7/10/2025 6:57:43 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 7/10/2025 6:57:43 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 7/10/2025 6:57:43 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 103003455
Filing Code Description: Motion
Filing Description: Motion of Wellpoint Insurance COmpany for Injunctive Relief Pending Appeal
Status as of 7/11/2025 7:15 AM CST

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 7/10/2025 6:57:43 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 7/10/2025 6:57:43 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 7/10/2025 6:57:43 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 7/10/2025 6:57:43 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 7/10/2025 6:57:43 PM | SENT |